## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **AMY ELIZABETH BEVEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. CIV-11-1410-D** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff's application for DIB, alleging a disability beginning April 17, 2009, was denied on initial consideration and on reconsideration at the administrative level (TR. 10). An ALJ held a hearing *de novo* on February 16, 2011 (TR. 31-55). Plaintiff

appeared with counsel and testified in support of her application (TR. 34-50). The ALJ

issued his decision on May 17, 2011, finding that Plaintiff was not disabled (TR. 10-26).

The Appeals Council denied Plaintiff's request for review on September 30, 2011,

making the decision of the ALJ the final decision of the Commissioner (TR. 1-5).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining

whether the factual findings are supported by substantial evidence in the record as a

whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569

F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*,

331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a

mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th

Cir. 2004). The court "meticulously examine[s] the record as a whole, including

anything that may undercut or detract from the [administrative law judge's] findings in

order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d

1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the

ALJ followed the applicable rules of law in weighing particular types of evidence in

disability cases, the court does not reweigh the evidence or substitute its own judgment

for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)

(quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff's earnings record demonstrated that she had received income exceeding the level for substantial gainful activity in the second and third quarters of 2009 (TR. 12). Nevertheless, the ALJ proceeded to step two where he found that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine; depressive disorder and anxiety disorder (TR. 12). At step three, the ALJ determined that none of Plaintiff's impairments, singly or in combination, meet or equal the limiting characteristics of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15). At step four, the ALJ first formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry at least twenty pounds occasionally and at least ten pounds frequently; to stand and/or walk for at least six hours total during an eight-hour workday; and to sit for at least six hours total during an eight-hour workday. She can occasionally stoop, crouch, crawl, kneel and balance. The claimant can occasionally climb stairs but can never climb ladders. Due to psychologically based factors, the claimant has more than slight limitations in the following areas but can still perform the tasks. She can perform simple and some complex instructions; she can sustain concentration and persistence for extended periods of time; she can interact with coworkers, supervisors and the public; and she is able to respond to changes in the workplace. If a person can perform light work, she can also perform sedentary work

(TR. 17). The ALJ then determined that Plaintiff was unable to perform her past relevant work (PRW) as a licensed practical nurse, office nurse or cook (TR. 24). At step five, the ALJ relied on the testimony of the VE and determined that Plaintiff could perform representative occupations such as housekeeping cleaner (TR. 25). Thus, at step five of the sequential evaluation process the ALJ determined that Plaintiff was not disabled and therefore not entitled to DIB (TR. 25-26).

## ISSUES PRESENTED

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion of her treating physician, Boyce R. Coleman, M.D; that the ALJ failed to consider the combined effects of obesity and her severe impairments; and that the ALJ erred in his analysis of Plaintiff's credibility.

## ANALYSIS

### I.    The ALJ's Review of Treating Physician's Opinions

Plaintiff contends that the ALJ erred in the weight he assigned to Dr. Coleman's medical source opinions concerning both her physical and mental impairments. On April 8, 2010, Plaintiff became an established patient at the Central Oklahoma Family Medical Center, where Dr. Coleman was working at least by June 30, 2010 (TR. 445-451). She was initially seen by Matthew R. Strunk, PA-C, and the Danielle Byrd, LPN (TR. 451). Plaintiff reported that she suffered from hypothyroidism, hypertension, depression, lupus and anxiety (TR. 448).  Plaintiff's primary complaints were depression and chronic pain localized in her back (TR. 447). Plaintiff reported that her depression had

worsened, that she lacked energy, and had a persistent feeling of sadness and anxiety (TR. 449). Nevertheless, treatment notes indicate there was no muscle or joint pain, weakness, swelling or inflammation, restriction of motion or atrophy (TR. 449). The notes further reflect that Plaintiff was not experiencing any increased nervousness, mood changes or depression, but was, in fact, "coping well" (TR. 449).

In a follow-up visit on April 27, 2010, nursing notes reflect that Plaintiff's care had been transferred from the physician assistant (TR. 446). The notes indicate her complaints of back pain following surgery the year before (TR. 446).

On May 25, 2010, Plaintiff was seen in a follow-up appointment after she had been treated at an emergency room for heart palpitations (TR. 440-445). On this occasion she was attended by Danielle Byrd, LPN, and Imtiaz Ahmed, M.D. (TR. 445). This medical record states that Plaintiff was oriented, had appropriate judgment, had normal memory, and had appropriate mood and affect (TR. 444). She was advised to return to the clinic in three months (TR. 444).

On June 30, 2010, and again on November 10, 2010, Plaintiff presented for her regular follow-up appointments for pain management (TR. 438-439). On these two occasions, she was attended by Dr. Coleman. The nursing notes from the June 30, 2010 visit state that Plaintiff had previously been being treated for pain management by Dr. Ahmed (TR. 439). Plaintiff was again complaining of back pain, and the notes indicated that some of her medication was increased (TR. 439). Plaintiff was advised to return in four months.

The medical notes documenting the November 10, 2010 appointment indicate that Plaintiff complained of pain in her lower back and left leg, but she reported that her pain medication was adequate. The notes state that Plaintiff reported doing housework daily (TR. 438).

None of the treatment records from the Central Oklahoma Family Practice Center include any physical restrictions. Moreover, the clinic's medical records report only conservative treatment with pain medication and antidepressants. But Dr. Coleman completed a "Medical Source Statement-Physical" and a "Medical Source Statement-Mental" on January 31, 2011, both of which indicate that Plaintiff is seriously limited both physically and mentally, in her ability to perform work activities (TR. 497-500). Dr. Coleman indicated that Plaintiff could lift less than five pounds frequently and occasionally, sit for one hour continuously for a total of less than two hours in a typical eight-hour workday, and stand thirty minutes continuously for a total of less than two hours in a typical eight-hour workday (TR. 497). Dr. Coleman also stated that Plaintiff could never climb, stoop, kneel, or crouch; that she could only occasionally balance, crawl, or reach; but that she could frequently handle, finger, and feel (TR. 498). Additionally, Dr. Coleman stated that Plaintiff would have to lie down during the day to manage pain or other symptoms (TR. 498).

As for Plaintiff's mental impairments, Dr. Coleman was of the opinion that Plaintiff had marked limitations in the ability to remember locations and work-like procedures; the ability to understand, remember and carry out very short and simple

instructions; the ability to understand, remember and carry out detailed instructions; and in her ability to maintain attention and concentration for extended periods (TR. 499). Dr. Coleman also concluded that Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to make simple, work-related decisions (TR. 499-500).

The Tenth Circuit Court of Appeals has long recognized the proper analysis and assignment of weight to be given to the opinions of treating and non-treating sources. When considering the opinion of an "acceptable medical source" such as the claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight.

Even if the opinion of a treating physician is not given controlling weight, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given,

even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and his reasons must be closely tied to the factors specified in the regulations. *See Watkins*, 350 F.3d at 1300–01. Remand is required only if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis").  This second inquiry is governed by its own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a

specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id.* at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted).

In this case, the ALJ thoroughly reviewed all of the medical evidence in the record (TR. 13-15) and then compared it to Dr. Coleman's opinions as reported on the two medical source statements (TR. 21). It is obvious from the ALJ's decision that he did not assign controlling weight to Dr. Coleman's opinions. The ALJ stated that he was giving Dr. Coleman's opinions "very little weight" because the opinions were not supported by and were inconsistent with both Dr. Coleman's treatment records and the medical evidence as a whole (TR. 21). Specifically, the ALJ noted that Dr. Coleman had treated Plaintiff only two times. In the November 11, 2010 treatment notes, Dr. Coleman indicated that Plaintiff reported doing housework daily. On this occasion, Dr. Coleman prescribed 120 Lortab tablets for Plaintiff's use during the four months until her next follow-up appointment. As the ALJ correctly notes, the number of Lortab tablets would be the equivalent of only one tablet per day (TR. 21). The ALJ's clear inference is that control of a person's disabling pain would almost certainly require more medication than prescribed. The ALJ considered Dr. Coleman's opinion that Plaintiff is not capable of operating hand or foot controls (TR. 498) but rejected that opinion because Dr. Coleman never instructed Plaintiff not to drive (TR. 21). Finally, the ALJ

noted that Dr. Coleman's medical records did not include any objective physical findings, but were, rather, apparently based on Plaintiff's subjective comments (TR. 21). The ALJ's explanation for the weight given to Dr. Coleman's opinion regarding Plaintiff's restrictions is specific and closely tied the evidence in the record.

The ALJ gave Dr. Coleman's opinion regarding Plaintiff's mental status (TR.499-500) no weight (TR. 22). First, the ALJ noted that Plaintiff had never been referred for mental health counseling. He further noted that the medical records generated by the doctors with whom Dr. Coleman worked indicated that Plaintiff's judgment was appropriate, that she was oriented, and that she had normal memory and appropriate mood and affect (TR. 22; 444). The ALJ's reasons for rejecting Dr. Coleman's opinion regarding Plaintiff's mental impairments are also specific and closely tied to the evidence in the record. The ALJ did not, therefore, err in his analysis of or the weight given to Dr. Coleman's opinions.

## II.    The ALJ's Consideration of Plaintiff's Obesity

Plaintiff's next point of error is based on the ALJ's treatment of the evidence of Plaintiff's obesity. Plaintiff testified that she is 5'3" tall and weighs 240 pounds (TR. 35). The ALJ recognized that Plaintiff is obese (TR. 14).

The ALJ correctly stated that the former listing for obesity has been rendered obsolete by Social Security Ruling 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). The ALJ also recognized that the listings require an evaluation of obesity because it is a risk factor that increases an individual's chances of developing impairments in most body

systems (TR. 14). This evaluation is particularly important when, like Plaintiff, a claimant has both musculoskeletal impairments and obesity. *See* SSR 02-1p at *3.   At each step of the sequential evaluation, whether determining that a claimant with obesity does or does not have a listing-level impairment or combination of impairments, assessing a claimant's RFC, or determining what jobs, if any, a claimant could perform, an ALJ must consider the cumulative effects of obesity and the claimant's other impairments.  *Id.* at *1.

There is no specific body weight that, standing alone, makes obesity a "severe" impairment.  As the ruling cautions, however, a claimant's weight and body mass index (BMI), combined with musculoskeletal impairments, can make an otherwise mild or moderate condition severe.

In this case, the ALJ outlined the reasons for his consideration of Plaintiff's obesity in combination with her other impairments (TR. 15). The ALJ specifically stated that he had carefully considered the impact of obesity on Plaintiff's functioning at each step of the sequential evaluation. Ultimately, however the ALJ found no evidence that Plaintiff's obesity caused or contributed to work-related limitations (TR. 15). Courts generally take a lower tribunal at its word when it declares that it has considered a matter. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Moreover, the record is devoid of any evidence suggesting that Plaintiff's obesity contributes to her alleged limitations. The ALJ properly considered the effects of Plaintiff's obesity.

## III.    The ALJ's Credibility Analysis

Plaintiff contends that the ALJ's credibility assessment was insufficient in that the

ALJ did not properly consider Plaintiff's subjective complaints.

In *Wilson v.* Astrue, 602 F.3d 1136 (10th Cir. 2010), the Tenth Circuit Court of

Appeals restated the salient points a court must consider when reviewing credibility

determinations:

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability")

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68

F.3d 387, 391 (10th Cir. 1995)). The Court also restated the process an ALJ should use

in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's

> subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

In this case, the ALJ recited the rules governing the legal analysis of subjective symptoms such as pain, and he correctly applied the relevant factors in determining Plaintiff's credibility (TR. 17).

First, the ALJ considered Plaintiff's daily activities and found them to be less limited than one would expect, given her complaints of disabling symptoms and pain. The ALJ noted that Plaintiff is able to get three children ready for school, take them to school, and prepare meals (TR. 18). The ALJ acknowledged that Plaintiff had undergone fusion surgery, which suggests that Plaintiff's symptoms were genuine, but the ALJ further noted that Plaintiff had reported that the surgery had helped her low back pain (TR. 18). The ALJ also noted that Plaintiff had not stopped working for reasons related to her allegedly disabling impairments (TR. 19). Finally, the ALJ concluded from the medical records that Plaintiff exhibited drug-seeking behavior by changing doctors after

the first doctor indicated his reluctance to prescribe more Lortab and Xanax (TR. 19). Although Plaintiff contends that the ALJ misconstrued the record in this regard, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff had engaged in drug-seeking behavior. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (ALJ properly considered claimant's drug-seeking behavior in determining credibility about pain and limitations and determining that credibility was compromised by drug-seeking behavior). This court's review does not include a re-weighing of the evidence. Thus, it appears that the ALJ properly evaluated Plaintiff's credibility.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 25, 2013**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on **February 7, 2013**.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE